Liza M. Walsh
William T. Walsh, Jr.
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

*Attorneys for Plaintiff Intel Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INTEL CORPORATION,<br><br>      Plaintiff,<br><br>  v.<br><br>GEORGE J. MIAO,<br><br>      Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

  Plaintiff Intel Corporation ("Intel"), by its attorneys, Walsh Pizzi O'Reilly Falanga LLP and Winston & Strawn LLP, files this Complaint against Defendant George J. Miao ("Miao" or "Defendant"), and hereby alleges as follows:

**INTRODUCTION**

  1. This action arises from former Intel employee George J. Miao's failure to assign to Intel certain technology that he developed while employed as an engineer at Intel, as required by his employment agreement. Intel asserts claims against Miao for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty, as Miao applied for a patent—days after leaving Intel—that claims technology Miao developed during the course of his responsibilities at Intel, that related to Intel's business, used Intel's equipment, supplies, or

-1-

facilities, and was based on Intel's proprietary information. Intel also seeks a declaratory judgment that Miao lacked the authority to assign the technology to any entity other than Intel under the terms of his employment agreement.

## PARTIES

2. Intel Corporation is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located in Santa Clara, California.

3. Upon information and belief, George J. Miao is an individual residing at 601 Somerset Court in Canton, Georgia 30115. Mr. Miao was a resident at 2 Inverness Drive, Marlboro New Jersey 07746 when he filed the application for U.S. Patent 7,200,166.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because the parties in this action are citizens of different States and the amount in controversy exceeds $75,000. Upon information and belief, Miao and/or the current assignees of the patent have valued U.S. Patent 7,200,166 ("the '166 Patent") at more than $75,000. Intel also seeks recovery of legal expenses exceeding $75,000 that it has incurred, and continues to incur, defending infringement allegations regarding the '166 Patent that Miao was obligated to assign to Intel. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202 because Plaintiff seeks relief under the federal Declaratory Judgment Act.

5. This Court has specific jurisdiction over Miao because Miao created contacts within New Jersey by breaching his employment agreement within this state. Miao's acts of breach give rise to this action. Exercising jurisdiction over Miao would comport with traditional notions of fair play and substantial justice.

6.  Venue is proper in the United States District Court for the District of New Jersey under 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred within New Jersey.

## FACTUAL ALLEGATIONS

7.  Miao is a former Intel employee. He worked at Intel from approximately June 14, 1999 until July 2, 2003 as an engineer, including at an Intel facility located in the Phoenix, Arizona area. *See* Ex. 1 (Miao-Signed Inventor Agreement); Ex. 2 (Miao-Signed Exit Documentation and Termination Packet); Ex. 3 (Inventor Declaration for U.S. Patent Application 09/467,611).

8.  On June 14, 1999, Miao signed an Intel employment agreement (the "Agreement") that contained a number of provisions related to intellectual property. Ex. 1 (Miao-Signed Inventor Agreement).

9.  Under the Agreement, Miao was required to "promptly disclose and….assign to Intel all rights" in intellectual property that he created or developed while at Intel:

> During my employment with Intel ***I will, without additional compensation, promptly disclose and, to the full extent allowed by law, assign to Intel all rights to which I may be entitled with respect to patents***, trade secrets, copyrights, mask works, trademarks, inventions, discoveries, designs, formulae, processes, methods, manufacturing techniques, improvements, ideas, copyrightable works and other intellectual property: (a) ***which relate to Intel's past, present, or demonstrated or reasonably foreseeable future business or research***, whether or not developed during normal working hours; or (b) ***which are developed with the use or aid of any Intel equipment, supplies, or facilities***; or (c) ***which use or are based on or developed from any proprietary or confidential information of Intel***, or a third party, access to which I obtain through Intel or in the course of my duties at Intel. …

10. Miao also promised that, were he to seek a patent from the United States Patent and Trademark Office for any intellectual property he acquired or controlled while at Intel, he would inform Intel's Legal Department of any such rights he obtained:

> [A]s to any intellectual property . . . which I acquire or control during my Intel employment and which is not assigned or licensed to Intel, I agree that: (A) I will

(i) notify Intel Legal of any change in status, within five working days of such change, such as my acquisition of a new intellectual property right, or such as a patent application becoming an issued patent, (ii) notify Intel Legal promptly upon learning or reasonably suspecting that any Intel product includes, or is proposed to include, such intellectual property…and (iv) not use my Intel employment to in any way disadvantage Intel with regard to any such intellectual property…

11. While employed at Intel, Miao developed finite impulse response filter technology for dual-mode wireless communications in furtherance of Intel's business or reasonably foreseeable future business or research.

12. Miao's work on finite impulse response filter technology for dual-mode wireless communications at Intel also made use of Intel equipment, supplies, and facilities.

13. On information and belief, Miao's work on finite impulse response filter technology for dual-mode wireless communications at Intel was based on or developed from proprietary and confidential information of Intel, or a third party, access to which Miao obtained through Intel or in the course of his duties at Intel.

14. Miao also collaborated with other Intel employees, including at least Dr. Tinku Acharya and Dr. Gopal Nair, as part of his Intel work developing finite impulse response filter technology for dual-mode wireless communications.

15. In relation to his work on finite impulse response filters for dual-mode wireless communications at Intel, Miao submitted several "Intel Invention Disclosures," including at least (i) Invention Disclosure 12377 (the "12377 Disclosure") on August 15, 1999; (ii) Invention Disclosure 12174 (the "12174 Disclosure") on July 14, 1999; and (iii) Invention Disclosure 12175 (the "12175 Disclosure") on July 14, 1999. *See* Ex. 4 (12377 Disclosure); Ex. 5 (12174 Disclosure); Ex. 6 (12175 Disclosure).

16. The 12377 Disclosure describes Miao's work as an invention for "[a]n integrated approach for VLSI implementation of a dual mode wireless terminal both for W-CDMA and GSM

standard." Ex. 4 (12377 Invention Disclosure) at 1. The 12377 Disclosure explains that the details of a filter discussed in the 12377 Disclosure can further be found in the 12174 Disclosure and the 12175 Disclosure. *Id*. at 9. The 12377 Disclosure also identifies Intel engineer Dr. Tinku Acharya as a co-inventor. *Id*. at 1.

17. The 12174 Disclosure describes Miao's work at Intel related to an invention for "[a]n Efficient Low Power VLSI Architecture for Squared-Root-Raised-Cosine (SRRC) symmetric FIR filter using a serial input single clock output cellular array." Ex. 5 (12174 Disclosure) at 1. The 12174 Disclosure also identifies Intel engineer Dr. Tinku Acharya as a co-inventor. *Id*.

18. The 12175 Disclosure describes Miao's work at Intel related to an invention for "[a]n Efficient Systolic algorithm for VLSI Implementation of a Squared-Root-Raised-Cosine (SRRC) symmetric FIR filter using broadcast input and serial output approach." Ex. 6 (12175 Disclosure) at 1. The 12175 Disclosure also identifies Intel engineer Dr. Tinku Acharya as a co-inventor. *Id*.

19. While an Intel employee and with Intel's knowledge and assistance, Miao submitted U.S. Patent Application No. 09/467,611 ("the '611 Application") to the U.S. Patent and Trademark Office on December 20, 1999. Ex. 7 ('651 Patent). The patent applications were based on Miao's work at Intel as described in the 12377 Disclosure, 12174 Disclosure, and 12175 Disclosure.

20. The '611 Application resulted in Intel obtaining U.S. Patent 7,245,651 ("the Intel '651 Patent"), entitled "Dual Mode Filter for Mobile Telecommunications," which lists both Miao and Dr. Acharya as inventors. Ex. 7 (Intel '651 Patent). Among other things, the Intel '651 Patent teaches a dual-mode finite impulse response filter in which:

> the filters 142a, 144a are programmable, [where] in one embodiment of the present invention, the filter 142a may selectively provide the number of taps (53) used for the first phase of GSM filtering or the number of taps (21) for W-CDMA filtering. When a W-CDMA signal is recognized, software controls the register 168 to set the proper number of taps in the filter 142a and to select the appropriate multiplexer 164 output.

*Id.* at 12:20-2

21. Miao left his employment at Intel on or about July 2, 2003. Ex. 2 (Miao-Signed Exit Documentation and Termination Packet). At the time of his departure, Miao worked at an Intel facility located in Morganville, New Jersey. Ex. 2 (Miao Exit Documentation and Termination Packet). Approximately eight days later, on July 10, 2003—without Intel's knowledge or permission—Miao filed U.S. Patent Application 10/616,840 (Ex. 8, "the '840 Application") which resulted in the '166 Patent. Ex. 9 ('166 Patent). Miao lists himself as the sole inventor. Ex. 8 ('840 Application); Ex. 9 ('166 Patent). Both the '840 Application and '166 Patent list Miao's address as 2 Inverness Dr., Marlboro, New Jersey 07746. Based on information and belief, Miao prepared the '840 Application while living in New Jersey and working at Intel's New Jersey facility.

22. Moreover, in the approximately eight intervening days between Miao's departure from Intel and his filing of the '840 Application, Miao filed two additional patent applications: U.S. Patent Application 10/614,139, which ultimately issued as U.S. Patent No. 7,305,057, and U.S. Patent Application 10/614,139, which ultimately issued as U.S. Patent No. 7,433,382.

23. The United States Patent and Trademark Office issued the '166 Patent on April 3, 2007. Ex. 9 ('166 Patent). The '166 Patent claims technology related to a "dual-mode transceiver for indoor and outdoor ultra wideband communications." *Id.* at 1 (Abstract).

24. Claim 11 of the '166 Patent recites "[a] dual-mode implementation system of a digital lowpass-shaping FIR transmission filter" which is the same subject matter that Miao worked on while at Intel. *Id*. at 39 (Claim 11).

25. Miao did not disclose his work on dual-mode finite impulse response filters at Intel—as memorialized in the Intel Disclosures—to the United States Patent and Trademark Office while prosecuting the '840 Application.

26. Specifically, Miao did not disclose the work reflected in the 12377 Disclosure to the United States Patent and Trademark Office while prosecuting the '840 Application.

27. Miao did not disclose the work reflected in the 12174 Disclosure to the United States Patent and Trademark Office while prosecuting the '840 Application.

28. Miao did not disclose the work reflected in the 12175 Disclosure to the United States Patent and Trademark Office while prosecuting the '840 Application.

29. Miao did not disclose the '611 Application to the United States Patent and Trademark Office while prosecuting the '840 Application.

30. Miao did not disclose the Intel '651 Patent to the United States Patent and Trademark Office while prosecuting the '840 Application.

31. Upon information and belief, and based on at least the 12377 Disclosure, 12174 Disclosure, 12175 Disclosure, and the Intel '651 Patent, Miao developed the finite impulse response filter technology for dual-mode wireless communications described in Claim 11 of the '166 Patent as part of his work at Intel in furtherance of Intel's business or reasonably foreseeable future business or research.

32. Upon information and belief, and based on at least the 12377 Disclosure, 12174 Disclosure, 12175 Disclosure, and the Intel '651 Patent, Miao developed the finite impulse

response filter technology for dual-mode wireless communications described in Claim 11 of the '166 Patent using Intel equipment, supplies, and facilities.

33. Upon information and belief, and based on at least the 12377 Disclosure, 12174 Disclosure, 12175 Disclosure, and the Intel '651 Patent, Miao developed the finite impulse response filter technology for dual-mode wireless communications using Intel's proprietary and confidential information. This technology is described in Claim 11 of the '166 Patent. Therefore, Claim 11 of the '166 Patent made use of, and was based on, proprietary and confidential information of Intel.

34. On October 24, 2008, Miao entered into a patent assignment agreement with Flezi, LLC ("Flezi") ("Flezi Assignment No. 1") that purportedly transferred his ownership rights in the '166 Patent to Flezi. Ex. 10 (Flezi Assignment No. 1).

35. On September 6, 2015, Flezi entered into a patent assignment agreement with Miao, in which the patent rights to the '166 Patent purportedly reverted back to Miao ("Miao Assignment"). Ex. 11 (Miao Assignment). An individual named Rong Hu signed the agreement on behalf of Flezi as its Vice President. On information and belief, Rong Hu is Miao's spouse.

36. On November 23, 2015, Miao again entered into a patent assignment agreement with Flezi ("Flezi Assignment No. 2"). The agreement purportedly assigned Miao's rights in the '166 Patent back to Flezi. Ex. 12 (Flezi Assignment No. 2).

37. On August 7, 2017, Flezi entered into a patent assignment agreement with MIMO Research, LLC ("MIMO Research") ("MIMO Research Assignment") that purportedly assigned Flezi's rights in the patent to MIMO Research. Ex. 13 (MIMO Research Assignment).

38. On information and belief, Miao is a member of, or otherwise affiliated with, Flezi and was involved in brokering and executing the MIMO Research Assignment.

39. On May 27, 2022, MIMO Research filed a Complaint for Patent Infringement against Intel alleging that certain of Intel's FPGA software products infringe the '166 Patent.[1] Ex. 14 (MIMO-Intel Complaint). After receiving the MIMO-Intel Complaint, Intel discovered that the listed inventor, Miao, was a former Intel employee; that his work had resulted in the Intel '651 Patent; that Claim 11 of the '166 Patent, which MIMO Research asserted against Intel, constituted a purported invention that Miao had developed as an Intel employee, as reflected in at least the 12377 Disclosure, 12174 Disclosure, 12175 Disclosure, and Intel '651 Patent; and that Claim 11 of the '166 Patent constituted an invention that Miao was obligated to assign to Intel pursuant to Miao's Agreement.

40. In addition, under the Agreement, Miao agreed to toll the statute of limitations for any breach arising from the Agreement until Intel obtained actual knowledge of the facts giving rise to the breach:

> If I fail to make any required disclosure or breach any term of this paragraph [], I agree that the statute of limitations shall be tolled as to any claim, right or cause of action Intel may have against me relating to such disclosure or breach that Intel would have discovered had the required disclosure been made, until such time as Intel obtains actual knowledge of the facts giving rise to its claim.

41. Intel now brings this lawsuit to recover for damages related to Miao's breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and breach of the Agreement, which required him to give prompt notice to Intel of his pursuit of the '166 Patent and to assign to Intel the rights to any invention in the '166 Patent. Miao has breached the Agreement by applying for the '166 Patent and assigning it to MIMO Research, instead of Intel, for the purpose of prosecuting a patent infringement case against Intel related to a patent in which Intel has ownership rights. Intel seeks to recover damages related to Miao's breach of the Agreement,

---

[1] The lawsuit is styled *MIMO Research, LLC v. Intel Corporation* and was filed in the Western District of Texas, Waco Division (C.A. No. 6:22-cv-542).

under which Miao should have granted Intel ownership of the '166 Patent. Intel is entitled to any economic value obtained through monetization of the patent and its expenses in defending itself against allegations of infringement based on claims in the '166 Patent. Intel further seeks a declaration that Miao lacked the authority to assign the '166 Patent to any entity other than Intel under the Agreement.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### BREACH OF CONTRACT

42. Plaintiff incorporates all the above paragraphs as though fully set forth herein.

43. On or about June 14, 1999, Miao entered into the Agreement with Intel.

44. Miao's Agreement is a valid and enforceable contract.

45. Miao breached several obligations under the Agreement.

46. Miao breached the Agreement by failing to promptly notify Intel Legal that he had applied for and obtained a patent in the '166 Patent, which describes technology that Intel owns in the '651 Patent.

47. By seeking the '166 Patent without disclosing it to Intel or informing the U.S. Patent and Trademark Office of his work resulting in the Intel '651 Patent, Miao used his Intel employment in a way that disadvantaged Intel with regard to the intellectual property that he developed while employed.

48. Miao breached the Agreement by failing to assign to Intel the ownership rights to the invention claimed in the '166 Patent.

49. Upon information and belief, Miao breached the Agreement by assigning the '166 Patent to Flezi, and subsequently to MIMO Research, for the purpose of MIMO Research filing suit against Intel, in which it alleges Intel infringes at least Claim 11 of the '166 Patent.

50. MIMO Research filed the Complaint for Patent Infringement on May 27, 2022 alleging infringement of Claim 11 of the '166 Patent.

51. Intel discovered the facts giving rise to Miao's breach of the Agreement on or about June 7, 2022.

52. Intel requests that the Court compel performance under the contract by requiring Miao to assign to Intel all ownership rights in any intellectual property that he developed during his Intel employment and which he later claimed to have invented in the '166 Patent.

53. Intel further seeks damages resulting from the breach which include, but are not limited to, (i) any value received through monetization of the '166 Patent, and (ii) payment of any judgment or fees, including attorneys' fees, that Intel incurs as a result of MIMO Research's litigation against Intel related to the '166 patent.

**SECOND CAUSE OF ACTION:**
**DECLARATORY JUDGMENT THAT MIAO LACKED THE RIGHT TO TRANSFER THE '166 PATENT**

54. Intel further seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), which provides that "[i]n a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, or whether or not further relief is or could be sought."

55. Miao assigned the '166 Patent to Flezi in 2008, and again to Flezi in 2015. Exs. 10-12 (Flezi Assignment No. 1, Miao Assignment, Flezi Assignment No. 2). On information and belief, Miao was further involved in Flezi's assignment of the '166 Patent to MIMO Research in 2017. Ex. 13 (MIMO Research Assignment). Miao pursued and executed each of these assignments despite being obligated to assign the '166 Patent to Intel.

56. Intel seeks a declaration that Miao was obligated, under the Agreement, to assign inventions claimed in the '166 Patent, including at least Claim 11, to Intel. As a result, Miao lacked the authority to enter into the four consecutive transfer agreements between Miao and Flezi (Flezi Assignment No. 1), Flezi and Miao (Miao Assignment), Miao and Flezi (Flezi Assignment No. 2), and Flezi and MIMO Research (MIMO Research Assignment).

### THIRD CAUSE OF ACTION:
### BREACH OF FIDUCIARY DUTY

57. Plaintiff incorporates all the above paragraphs as though fully set forth herein.

58. On or about June 14, 1999, Miao entered into the Agreement with Intel, thereby establishing his employment relationship with Intel.

59. As a result of his employment by Intel, Miao owed a fiduciary duty to Intel.

60. Miao breached his fiduciary duty of loyalty to Intel by using proprietary information owned by Intel to apply for and obtain the '166 Patent.

61. By seeking the '166 Patent without disclosing it to Intel, or informing the U.S. Patent and Trademark Office of his work at Intel resulting in the Intel '651 Patent, Miao used his Intel employment in a way that disadvantaged Intel with regard to the intellectual property that he developed while employed by Intel.

62. Because of Miao's breach, Intel suffered actual damages. Intel is entitled to recovery for actual damages and restitution for Miao's improper gain. Intel is also entitled to recover punitive damages given that Miao acted with reckless indifference to the interests of Intel.

### FOURTH CAUSE OF ACTION:
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

63. Plaintiff incorporates all the above paragraphs as though fully set forth herein.

64. The Agreement carried with it an implied covenant of good faith and fair dealing on the part of Miao and Intel.

65. Upon information and belief, Miao sought the '166 Patent without disclosing it to Intel, and without informing the U.S. Patent and Trademark Office of his work resulting in the Intel '651 Patent.

66. Upon information and belief, Miao's decision to assign the patent to Flezi, and subsequently to MIMO Research, rather than Intel, deprived Intel of the benefits of the Agreement that specifically provided for the assignment of intellectual property to Intel.

67. By acting in a way inconsistent with Intel's reasonable expectations, Miao breached the covenant of good faith and fair dealing.

68. Intel requests that the Court compel performance under the contract by requiring Miao to assign to Intel all ownership rights in any intellectual property that he developed during his Intel employment and which he later independently pursued, including at least the '166 Patent.

69. Intel further seeks damages resulting from the breach which include, but are not limited to, (i) any value received through monetization of the '166 Patent, and (ii) payment of any judgment or fees, including attorneys' fees, that Intel incurs as a result of MIMO Research's litigation against Intel.

## DEMAND FOR JURY TRIAL

Intel Corporation hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

A. Assume jurisdiction of this action;

B. Issue judgment in Plaintiff's favor and against Defendant on all causes of action alleged herein;

C. Declare that Miao was obligated to assign the '166 Patent to Intel under the Agreement;

D.  Declare that Miao lacked the authority to transfer the '166 Patent to any entity other than Intel under the Agreement;

E.  Grant Intel an award of any value received through monetization of the '166 Patent and obligate Miao to pay any judgment or fees, including attorneys' fees, that Intel incurs as a result of MIMO Research's litigation against Intel;

F.  Award Plaintiff all costs and fees, including reasonable attorneys' fees, incurred in connection with this action; and

G.  Grant such further relief as the Court deems just, equitable, and proper.

Respectfully submitted,

Date: October 31, 2022

By: */s/ Liza M. Walsh*

Liza M. Walsh
William T. Walsh, Jr.
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
Telephone: (973) 757-1100
Facsimile: (973) 757-1090

Krishnan Padmanabhan
KPadmanabhan@winston.com
(*pro hac vice* forthcoming)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Nimalka Wickramasekera
(*pro hac vice* forthcoming)
nwickramasekera@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Telephone:(213) 615-1700
Facsimile: (213) 615-1750

Brian Nisbet
(*pro hac vice* forthcoming)
bmisbet@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile:  (312) 558-5700

*Attorneys for Plaintiff Intel Corporation*

-16-

## L. CIV. R. 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2 and 28 U.S.C. § 1746, the undersigned members of the bar of this Court hereby declare that the matter in controversy is not presently the subject of any other action pending in any other Court, or of any pending arbitration or administrative proceeding.

Date: October 31, 2022         By: *s/Liza M. Walsh*

                                            Liza M. Walsh
                                            William T. Walsh, Jr.
                                            WALSH PIZZI O'REILLY FALANGA LLP
                                            Three Gateway Center
                                            100 Mulberry Street, 15th Floor
                                            Newark, NJ 07102
                                            Telephone: (973) 757-1100