Edward J. Dauber, Esq.
Michael H. Freeman, Esq.
GREENBERG DAUBER EPSTEIN & TUCKER, P.C.
One Gateway Center, Suite 600
Newark, New Jersey 07102
(973) 643-3700

Daniel P. Hipskind, Esq.
Erin E. McCracken, Esq.
BERGER & HIPSKIND LLP
9538 Brighton Way, Ste. 320
Beverly Hills, CA 90210
323-886-3430
*Pro Hac Vice Application is pending*

Attorneys for Defendant, George J. Miao

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTEL CORPORATION,<br><br>               Plaintiff,<br><br>       v.<br><br>GEORGE J. MIAO,<br><br>               Defendant. | Case No. 3:22cv06370-GC/LHG |

---

**Memorandum of Law in Support of Defendant George J. Miao's Motion To Dismiss For Lack Of Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2)**

---

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   STATEMENT OF FACTS ................................................................................... 2

    A. The Parties.............................................................................................. 2

    B. Intel's Claims Against Dr. Miao ........................................................... 3

    C. Intel's Claims Do Not Arise From Dr. Miao's Activities In New Jersey ...................... 4

III.  LEGAL STANDARD ......................................................................................... 6

IV.  THE COURT LACKS PERSONAL JURISDICTION OVER DR. MIAO WITH RESPECT TO INTEL'S CONTRACT-BASED CLAIMS ......................................................... 11

V.   THE COURT LACKS PERSONAL JURISDICTION OVER DR. MIAO WITH RESPECT TO INTEL'S FIDUCIARY DUTY CLAIM .......................................................... 16

VI.  CONCLUSION................................................................................................. 17

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Ahn v. Korea Advanced Inst. of Sci. & Tech.*,
   2014 U.S. Dist. LEXIS 161411 (D.N.J. Nov. 17, 2014) ......................................................... 10

*Baldeo v. City of Paterson*,
   2019 U.S. Dist. LEXIS 9636 (D.N.J. Jan. 18, 2019) ............................................................. 10

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017) ............................................................................................................ 8

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ............................................................................................................. 8, 9

*Carteret Sav. Bank, FA v. Shushan*,
   954 F.2d 141 (3d Cir. 1992) ................................................................................................... 7

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*,
   651 F.2d 877 (3d Cir. 1981) ................................................................................................... 8

*Dag Jewish Directories, Inc. v. Hebrew English Yellow Pages, Inc.*,
   2009 U.S. Dist. LEXIS 31000 (D.N.J. Apr. 13, 2009) ......................................................... 15

*D'Jamoos v. Pilatus Aircraft Ltd.*,
   566 F.3d 94 (3d Cir. 2009) ..................................................................................................... 8

*Fair Lab. Practices Assocs. v. Riedel*,
   2014 U.S. Dist. LEXIS 148549 (D.N.J. Oct. 20, 2014) .................................................. 10, 13

*Gehling v. St. George's Sch. of Med., Ltd.*,
   773 F.2d 539 (3d Cir. 1985) ................................................................................................... 8

*Gillig v. Nike, Inc.*,
   602 F.3d 1354 (Fed. Cir. 2010) ............................................................................................ 13

*Hanson v. Denckla*,
   357 U.S. 235 (1958) .............................................................................................................. 11

*Hanson v. G&G Motorcycles, Inc.*,
   2022 U.S. Dist. LEXIS 38122 (D.N.J. Mar. 2, 2022) ................................................... 8, 9, 12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ............................................................................................................... 8

*HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*,
   600 F.3d 1347 (Fed. Cir. 2010) ............................................................................................ 13

*HV Assocs. v. PNC Bank, N.A.*,
  2019 U.S. Dist. LEXIS 68705 (D.N.J. Apr. 18, 2019)......................................................... 10, 16

*IMO Indus., Inc. v. Kiekert*, AG,
  155 F.3d 254 (3d Cir. 1998) ................................................................................................. 7

*Int'l Shoe Co. v. Wash.*,
  326 U.S. 316 (1945) ............................................................................................................ 6

*Kamdem Ouaffo v. Pepsico, Inc.*,
  2015 U.S. Dist. LEXIS 28497 (S.D.N.Y. Mar. 9, 2015)........................................................ 18

*Knierim v. Siemens Corp.*,
  2008 U.S. Dist. LEXIS 26571 (D.N.J. Mar. 31, 2008) ......................................................... 9

*Luongo v. Vill. Supermarket, Inc.*,
  261 F. Supp. 3d 520 (D.N.J. 2017) ....................................................................................... 12

*Magill v. Elysian Glob. Corp.*,
  2021 U.S. Dist. LEXIS 63920 (D.N.J. Apr. 1, 2021)......................................................... 9, 15

*Marks v. Alfa Grp.*,
  369 F. App'x 368 (3d Cir. 2010)............................................................................................ 10

*Marten v. Godwin*,
  499 F.3d 290 (3d Cir. 2007) ................................................................................................ 6, 7

*McClung v. 3M Co.*,
  2019 U.S. Dist. LEXIS 164198 (D.N.J. Sept. 25, 2019).................................................... 8

*Medwell, LLC v. Cigna Corp.*,
  2021 U.S. Dist. LEXIS 96292 (D.N.J. May 19, 2021) ........................................................ 11

*Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*,
  960 F.2d 1217 (3d Cir. 1992) ............................................................................................. 6, 9

*Miller v. Native Link Constr., LLC.*,
  2017 U.S. Dist. LEXIS 131021 (W.D. Pa. Aug. 17, 2017).................................................. 10

*N. Penn Gas Co. v. Corning Nat. Gas Corp.*,
  897 F.2d 687 (3d Cir. 1990)................................................................................................ 8

*O'Connor v. Sandy Lane Hotel Co.*,
  496 F.3d 312 (3d Cir. 2007)................................................................................................ 8

*Pet Gifts USA, LLC v. Imagine This Co., LLC*,
  2015 U.S. Dist. LEXIS 134322 (D.N.J. Oct. 2, 2015)........................................................ 10

*Picazio v. Melvin K. Silverman & Associates, P.C.*,
    965 F. Supp. 2d 1411 (S.D. Fla. 2013) .................................................................... 14

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Asso.*,
    819 F.2d 434 (3d Cir. 1987) ............................................................................... 7

*Puricelli v. Barkan*,
    2022 U.S. Dist. LEXIS 4281 (D.N.J. Jan. 7, 2022) ............................................... 11

*Stewart v. Stuckey-Smith*,
    2022 U.S. Dist. LEXIS 209792 (D.N.J. Oct. 28, 2022) ............................. 10, 16, 17

*Turner v. Boyle*,
    2013 U.S. Dist. LEXIS 49977,(D.N.J. Apr. 8, 2013) ............................................. 6

*Wallace v. Keystone Printed Specialties Co.*,
    2016 U.S. Dist. LEXIS 132189 (D.N.J. Sept. 27, 2016) ........................................ 6

*Wolstenholme v. Bartels*,
    511 F. App'x 215 (3d Cir. 2013) ......................................................................... 10

## STATUTES

35 U.S.C. § 116 ................................................................................................. 13

35 U.S.C. § 256 ................................................................................................. 13

## RULES

Fed. R. Civ. P. 4(k) ............................................................................................. 7

Fed. R. Civ. P. 12(b)(2) ..................................................................................... 1, 6

N.J. Court R. 4:4-4(c) .......................................................................................... 7

## I.    INTRODUCTION

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of this action because the Court lacks personal jurisdiction over Defendant George Miao ("Defendant" or "Dr. Miao"), a 62year-old individual residing in Georgia with no ongoing ties or connections to New Jersey.  Plaintiff Intel Corporation ("Plaintiff" or "Intel"), a Delaware corporation with a California principal place of business, nowhere alleges that this Court has general jurisdiction over Dr. Miao, Intel's former employee who last worked for Intel in 2003.  Instead, Intel wrongly argues this Court has specific jurisdiction over Dr. Miao even though the supposed events giving rise to Intel's stale claims occurred primarily in Arizona and/or California.

Under the totality of the circumstances test that applies to Intel's contract-based claims against Dr. Miao, the Court lacks specific jurisdiction over Dr. Miao.  Indeed, Dr. Miao was residing in Arizona and working for Intel in Arizona when he signed the employment agreement at issue in this case.  And the majority of the alleged events giving rise to the supposed breaches of the employment agreement occurred when Dr. Miao was residing in Arizona and/or California. The sole alleged New Jersey contact is that Dr. Miao was residing in New Jersey when he filed an application that led to a U.S. patent Intel alleges should have been assigned to Intel; that is insufficient to establish specific jurisdiction over Dr. Miao particularly given that Dr. Miao was residing in California when the patent issued.  Moreover, even if Intel could show (it cannot) sufficient contacts between Dr. Miao and New Jersey with respect to Intel's contract-based claims, haling Dr. Miao into this Court—more than 600 miles from Dr. Miao's residence in Georgia—to answer for alleged wrongs occurring decades ago would not comport with traditional notions of fair play and substantial justice.

Under the *Calder* "effects test" that applies to Intel's breach of fiduciary duty claim against Dr. Miao, this Court lacks specific jurisdiction over Dr. Miao because New Jersey is neither the

focal point of the harm allegedly suffered by Intel nor the focal point of Dr. Miao's allegedly wrongful activity. Because Intel's Complaint is completely bereft of any facts that could support specific jurisdiction over Dr. Miao with respect to Intel's claim for breach of fiduciary duty, the claim should be dismissed.

For the foregoing reasons and those set forth below, this Court lacks personal jurisdiction over Dr. Miao. Accordingly, Intel's Complaint against Dr. Miao should be dismissed.

## II.    STATEMENT OF FACTS

### A.    The Parties

Plaintiff Intel Corporation is a Delaware corporation with a principal place of business in Santa Clara, California. ECF #1 ("Compl.") at ¶ 2. Intel does not allege that it is a New Jersey citizen. The Complaint is also bereft of any allegations concerning any ongoing contacts Intel may have with New Jersey.

Defendant George Miao is a 62-year-old individual who resides in Canton, Georgia. *Id.* at ¶ 3. Dr. Miao is an accomplished leader in the engineering field of digital signal processing. Dr. Miao holds a Ph.D. in Electrical Engineering from the Georgia Institute of Technology and is a co-author of *Digital Signal Processing and Statistical Classification*, and the author of *Signal Processing in Digital Communications*. Miao Decl.[1] at ¶ 4. Dr. Miao has held positions for several of the world's largest technology companies, including Motorola, Fujitsu, and Hewlett-Packard. *Id.* at ¶ 5. Dr. Miao is also a former Intel employee, having worked for Intel for four years. Compl. at ¶ 7. On June 14, 1999, Dr. Miao signed an employment agreement with Intel. At that time, Dr. Miao was residing in Arizona and working at an Intel facility in Arizona. *Id.*

---

[1] The Declaration of George J. Miao in Support of Defendant's Motion to Dismiss (referred to herein as the "Miao Decl.") is submitted contemporaneously herewith.

Although Dr. Miao lived in New Jersey for a brief period, he has not lived in New Jersey since 2006 and has no ongoing connections to or contacts with New Jersey. Miao Decl. at ¶ 9. Moreover, the allegations in the Complaint are not based on Dr. Miao's limited New Jersey contacts.

### B.    Intel's Claims Against Dr. Miao

Intel alleges four claims against Dr. Miao for (1) breach of contract; (2) declaratory judgment; (3) breach of fiduciary duty; and (4) breach of the implied covenant of good faith and fair dealing. Intel's breach of contract claim is predicated on an alleged breach of the 1999 employment agreement Dr. Miao signed while he was living and working in Arizona. Intel alleges that under the employment agreement, Dr. Miao was obligated to assign to Intel a patent—U.S. Patent No. 7,200,166 (the "'166 Patent")—that issued to Dr. Miao as the sole inventor on April 3, 2007, *over fifteen-and-a-half years ago*. Compl. at ¶ 48 (alleging that "Miao breached the Agreement by failing to assign to Intel the ownership rights claimed in the '166 Patent."). In order to bring this stale claim, Intel relies on an unconscionable tolling provision in the 1999 employment agreement which states: "If I fail to make any required disclosure or breach any term of this paragraph [], I agree that the statute of limitations shall be tolled as to any claim, right or cause of action Intel may have against me relating to such disclosure or breach that Intel would have discovered had the required disclosure been made, until such time as Intel obtains actual knowledge of the facts giving rise to its claim." *Id.* at ¶ 40. And although Intel claims it did not have actual knowledge of the facts giving rise to its claims against Dr. Miao until June 7, 2022, that claim strains credulity for many reasons, including based on Intel's own allegations and will be challenged substantively if this action proceeds in this Court (it should not). *Id.* at ¶ 51.

Intel also brings related claims for declaratory relief and breach of the implied covenant of good faith and fair dealing.  In its declaratory relief claim, Intel "seeks a declaration that Miao was obligated, under the Agreement, to assign inventions claimed in the '166 Patent, including at least Claim 11, to Intel." *Id.* at ¶ 56.  In its claim for breach of the implied covenant of good faith and fair dealing, Intel alleges that the "Agreement carried with it an implied covenant of good faith and fair dealing on the part of Miao and Intel," and Dr. Miao supposedly breached that covenant by "acting in a way inconsistent with Intel's reasonable expectations …." *Id.* at ¶ 67.

Intel also alleges a claim against Dr. Miao for breach of fiduciary duty.  Intel claims that Dr. Miao owed Intel a fiduciary duty and alleges he "breached his fiduciary duty of loyalty to Intel by using proprietary information owned by Intel to apply for and obtain the '166 Patent." *Id.* at ¶¶ 59-60.

## C.   Intel's Claims Do Not Arise From Dr. Miao's Activities In New Jersey

Intel does not allege that this Court has general jurisdiction over Dr. Miao, a resident of Georgia.  Instead, Intel alleges in a conclusory manner that this "Court has specific jurisdiction over Miao because Miao created contacts in New Jersey by breaching his employment agreement within this state.  … Exercising jurisdiction over Miao would comport with traditional notions of fair play and substantial justice." *Id.* at ¶ 5.  Intel's simplistic allegations lack factual support and are at odds with the controlling case law discussed below.  In fact, New Jersey has almost no relation to this case and haling Dr. Miao, a non-resident *individual* residing in Georgia, into this Court to respond to meritless claims relating to events occurring between 1999 and 2007 would not comport with traditional notions of fair play and substantial justice.

Dr. Miao was an Arizona resident when he signed the employment agreement with Intel. *Id.* at ¶ 7.  While residing and working for Intel in Arizona in 1999, Dr. Miao submitted several "Intel Invention Disclosures" including Invention Disclosure 12377, Invention Disclosure 12174,

4

and Invention Disclosure 12175.  *Id.* at ¶ 15; Compl. Ex. 4 at 1 (showing Dr. Miao's residence as Tempe, AZ on Invention Disclosure 12377); Compl. Ex. 5 at 1 (showing Dr. Miao's residence as Tempe, AZ on Invention Disclosure 12174); Compl. Ex. 6 at 1 (showing Dr. Miao's residence as Tempe, AZ on Invention Disclosure 12175).  While residing and working for Intel in Arizona, Dr. Miao also co-invented an invention that led to the issuance of U.S. Patent No. 7,245,651 (the "'651 Patent") to Intel.  *Id.* at ¶¶ 19, 20; Compl. Ex. 7 at 1 (listing "George J. Miao, Tempe, AZ (US)" as the first inventor on the face of the '651 Patent).  Intel principally relies on these three Invention Disclosures and the '651 Patent—all of which are connected to Arizona, not New Jersey—to support its claims that Dr. Miao allegedly breached his employment agreement by developing the technology claimed in the '166 patent while an Intel employee without assigning it to Intel.  Indeed, Intel alleges that "Claim 11 of the '166 patent recites '[a] dual-mode implementation system of a digital lowpass-shaping FIR transmission filter' which is the same subject matter that Miao worked on while at Intel."  Compl. at ¶ 24.  Intel further alleges that "based on at least the 12377 Disclosure, 12174 Disclosure, 12175 Disclosure, and the Intel '651 Patent, Miao developed the finite impulse response filter technology for dual-mode wireless communications described in Claim 11 of the '166 Patent as part of his work at Intel in furtherance of Intel's business or reasonably foreseeable future business or research," "using Intel equipment, supplies, and facilities," and "using Intel's proprietary and confidential information."  *Id.* at ¶¶ 31, 32, 33.  As a result, the principal facts Intel alleges to support its claims against Dr. Miao occurred in Arizona while Dr. Miao was an Arizona resident.

Intel also alleges that Dr. Miao supposedly breached his employment agreement by failing to notify Intel that he had "obtained a patent in the '166 Patent" and "by failing to assign to Intel the ownership rights to the invention claimed in the '166 Patent."  *Id.* at ¶¶ 46, 48.  But when the

'166 Patent issued in 2007, Dr. Miao was a resident of California.  Miao Decl. at ¶¶ 8, Ex. 1.
Because Dr. Miao could not have notified Intel that he had obtained the '166 Patent or assigned
the '166 Patent to Intel until it issued, any alleged breaches would have occurred in 2007 while
Dr. Miao was residing in California.  *Id.* at ¶ 8.

The only slight connection between New Jersey and this case is that the application which
led to the issuance of the '166 Patent listed a New Jersey address for Dr. Miao.  *Id.* at ¶ 21.  But
Dr. Miao's work that allegedly demonstrates that Dr. Miao invented the invention claimed in the
'166 Patent while an Intel employee was all done in Arizona, as explained above.  And when the
'166 Patent issued, Dr. Miao was a resident of California.  In other words, New Jersey has almost
no connection to Intel's stale claims against Dr. Miao and forcing a Georgia resident with no on-
going ties to New Jersey to litigate in New Jersey against a large, multinational corporation with
offices and employees across the world concerning decades-old claims would not comport with
traditional notions of fair play and substantial justice.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of a complaint for lack
of personal jurisdiction.  "The concept of 'personal jurisdiction,' or '*in personam* jurisdiction,'
refers to a court's power over a particular defendant."  *Turner v. Boyle*, 2013 U.S. Dist. LEXIS
49977, at *5-6 (D.N.J. Apr. 8, 2013) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).
The burden of establishing personal jurisdiction lies with the plaintiff.  *Marten v. Godwin*, 499
F.3d 290, 295-96 (3d Cir. 2007).  Where, as here, a defendant challenges the Court's jurisdiction,
the plaintiff shoulders the burden of demonstrating that jurisdiction is proper.  *Wallace v. Keystone
Printed Specialties Co.*, 2016 U.S. Dist. LEXIS 132189, at *4 (D.N.J. Sep. 27, 2016) (citing
*Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).  To meet

this burden, a plaintiff must establish with reasonable particularity—through sworn affidavits or other evidence—sufficient contacts between the defendant and the forum state. *Id.* Reliance by the plaintiff on the pleadings alone is not sufficient. *Id.* Only after the plaintiff meets its burden does the burden shift to the defendant to make a case that the exercise of jurisdiction would be unreasonable. *Id.*

A federal court sitting in diversity undertakes a two-step inquiry to determine whether it may exercise personal jurisdiction over a defendant. *IMO Indus., Inc. v. Kiekert*, AG, 155 F.3d 254, 259 (3d Cir. 1998). First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction. *Id.*; *see also Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting Fed. R. Civ. P. 4(k)) ("[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state."). Second, the court must apply the principles of due process. *IMO Indus., Inc.*, 155 F.3d at 259. In New Jersey, this inquiry is combined into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest extent permissible under the Due Process Clause. *Id.*; *see also Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992) (citing N.J. Court R. 4:4-4(c)) ("The New Jersey long-arm rule extends to the limits of the Fourteenth Amendment Due Process protection."). Due process permits the exercise of personal jurisdiction over a nonresident defendant where the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Asso.*, 819 F.2d 434, 437 (3d Cir. 1987) (internal citations and quotations omitted).

A plaintiff may establish personal jurisdiction by proving the existence of either specific or general jurisdiction. *Id.* To establish general jurisdiction, the plaintiff must "show significantly

more than mere minimum contacts;" the defendant's forum contacts must be "continuous and substantial." *Id.* (citing *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 541 (3d Cir. 1985); *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877 (3d Cir. 1981)).  To establish specific jurisdiction, a plaintiff must demonstrate that "the particular cause of action sued upon arose from the defendant's activities within the forum state." *Id.*

"Specific jurisdiction is invoked when the cause of action arises from the defendant's forum related activities." *N. Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 690 (3d Cir. 1990).  "Specific jurisdiction arises from 'an affiliation between the forum and the underlying controversy,' and a district court exercising specific jurisdiction 'is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *McClung v. 3M Co.*, 2019 U.S. Dist. LEXIS 164198, at *9 (D.N.J. Sep. 25, 2019) (quoting *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017)).

Determining whether specific jurisdiction exists is a three-part inquiry. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).  First, the defendant must have "'purposefully directed' his activities" at the forum. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  In other words, a defendant must have done something to purposefully avail itself of the privilege of conducting activities in the forum, "thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities.  *O'Connor*, 496 F.3d at 317 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  These first two prongs determine whether the defendant has "the requisite minimum contacts with the forum." *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

Third, if the plaintiff shows the defendant has sufficient minimum contacts with the forum, the burden shifts to the defendant to show that exercising jurisdiction would be unreasonable. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992). "In this regard, it must be reasonable to require the defendant to litigate the suit in the forum state, and a court may consider the following factors to determine reasonableness: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining an efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Magill v. Elysian Glob. Corp.*, 2021 U.S. Dist. LEXIS 63920, at *8-9 (D.N.J. Apr. 1, 2021) (citing *Burger King Corp.*, 471 U.S. at 477).

The specific jurisdiction analysis is claim specific. *Hanson v. G&G Motorcycles, Inc.*, 2022 U.S. Dist. LEXIS 38122, at *7 (D.N.J. Mar. 2, 2022). For breach of contract claims, "non-resident defendants deliberately target a forum when, among other activities, they 'engage in significant activities within [the] State' or create 'continuing obligations' [with] residents of the forum." *Id.* at *8 (citing *Burger King Corp.*, 471 U.S. at 475-76) (citation omitted). In addition, the court "'must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing.'" *Id.* (citing *Knierim v. Siemens Corp.*, 2008 U.S. Dist. LEXIS 26571 (D.N.J. Mar. 31, 2008)). *See also Burger King Corp.*, 471 U.S. at 479 (in determining whether to exercise specific jurisdiction in a breach of contract case, courts must examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."). Specific jurisdiction exists when a defendant's contacts with the forum were "instrumental in either

the formation or the breach of the contract." *Fair Lab. Practices Assocs. v. Riedel*, 2014 U.S. Dist. LEXIS 148549, at *8 (D.N.J. Oct. 20, 2014) (internal quotations and citation omitted).

With respect to breach of fiduciary duty claims, specific jurisdiction is examined under the *Calder* "effects test." *Ahn v. Korea Advanced Inst. of Sci. & Tech.*, 2014 U.S. Dist. LEXIS 161411, at *12-13 (D.N.J. Nov. 17, 2014). *See also Baldeo v. City of Paterson*, 2019 U.S. Dist. LEXIS 9636, at *2 (D.N.J. Jan. 18, 2019) (under New Jersey law, a claim for breach of fiduciary duty is a tort claim); *Pet Gifts USA, LLC v. Imagine This Co., LLC*, 2015 U.S. Dist. LEXIS 134322, at *23 (D.N.J. Oct. 2, 2015) (same); *Miller v. Native Link Constr., LLC.*, 2017 U.S. Dist. LEXIS 131021, at *79 (W.D. Pa. Aug. 17, 2017) ("Because … breach of fiduciary duty [is an] intentional tort[], the court applies the *Calder* 'effects test' to determine if sufficient minimum contacts exist with this forum.").

Under the *Calder* "effects test" "plaintiffs must show: '(1) the defendant committed an intentional tort; (2) the forum state is the focal point of the harm suffered by plaintiff; and (3) the forum state is the focal point of the defendant's tortious activity, because the defendant expressly aimed its tortious conduct there.'" *HV Assocs. v. PNC Bank, N.A.*, 2019 U.S. Dist. LEXIS 68705, at *20-21 (D.N.J. Apr. 18, 2019) (citing *Wolstenholme v. Bartels*, 511 F. App'x 215, 219 (3d Cir. 2013)). "At a minimum, [Plaintiff] must allege facts that establish that defendants 'expressly aimed' their conduct' at the forum state." *Stewart v. Stuckey-Smith*, 2022 U.S. Dist. LEXIS 209792, at *13 (D.N.J. Oct. 28, 2022) (quoting *Marks v. Alfa Grp.*, 369 F. App'x 368, 370 (3d Cir. 2010)). "Plaintiffs maintain an onerous burden in proving that defendants 'expressly aimed' their conduct at the forum state." *Id.* "To do so, a plaintiff must show that: (1) 'the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum;' and (ii) 'point to specific activity indicating that the defendant expressly aimed its tortious conduct

at the forum.'  Many Circuits, including the Third Circuit, 'require[] more than a finding that the

harm caused by the defendant's intentional tort is primarily felt within the forum.'"  *Id.* at \*13-14

(citations omitted).

### IV.   THE COURT LACKS PERSONAL JURISDICTION OVER DR. MIAO WITH RESPECT TO INTEL'S CONTRACT-BASED CLAIMS

Intel does not allege that this Court has general jurisdiction over Dr. Miao, a resident of

Georgia.  Instead, Intel alleges this Court has "specific jurisdiction over Miao because Miao

created contacts within New Jersey by breaching his employment agreement in this state" such

that "[e]xercising jurisdiction over Miao would comport with traditional notions of fair play and

substantial justice."  Compl. at ¶ 5.  Intel is wrong.

The specific jurisdiction analysis is claim specific.  *Hanson*, 2022 U.S. Dist. LEXIS 38122,

at \*7.  Intel's first cause of action is for breach of contract.  Although styled as a standalone claim

for declaratory judgment, Intel's second cause of action is part and parcel of its breach of contract

claim.[2]  *See id.* at ¶ 56 ("Intel seeks a declaration that Miao was obligated, ***under the Agreement***,

to assign inventions claimed in the '166 Patent, including at least Claim 11, to Intel.") (emphasis

added).  Intel's fourth cause of action is for breach of the implied covenant of good faith and fair

dealing.  In New Jersey, a claim for breach of the covenant of good faith and fair dealing is not "a

---

[2] To the extent Intel seeks to pursue its declaratory judgment claim as a standalone claim, it fails under Federal Rule of Civil Procedure 12(b)(6).  *See Puricelli v. Barkan*, 2022 U.S. Dist. LEXIS 4281, at \*12 (D.N.J. Jan. 7, 2022) ("Plaintiff's styling his request for a declaration as a standalone claim evinces a fundamental misunderstanding of the Act. …  Plaintiff does not link his request for declaratory judgment to another substantive legal provision.  Therefore, Count one must be dismissed."); *Medwell, LLC v. Cigna Corp.*, 2021 U.S. Dist. LEXIS 96292, at \*5-6 (D.N.J. May 19, 2021) ("Count 1 is a claim under the NJDJA asking the Court to declare MedWell's rights vis-à-vis Cigna—i.e., to determine what contractual or quasi-contractual obligations Cigna owes to MedWell. …  That [federal Declaratory Judgment] Act is not a standalone source of rights, but a procedural vehicle for litigants to seek a declaration of their rights under some other law.  Thus, Count 1 requires dismissal as a standalone claim ….").

free-standing cause of action; such a covenant is an implied covenant *of a contract*." *Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 532 (D.N.J. 2017) (emphasis in original). Accordingly, the breach of contract, declaratory judgment, and breach of the covenant of good faith and fair dealing claims are contract claims that should be analyzed together for purposes of specific jurisdiction considering "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Hanson*, 2022 U.S. Dist. LEXIS 38122, at *8 (internal quotations and citation omitted).

The totality of the circumstances establish that the Court lacks personal jurisdiction over Dr. Miao with respect to Intel's contract-based claims. Dr. Miao signed his employment agreement with Intel on June 14, 1999. At that time, Dr. Miao was an Arizona resident working at an Intel facility in Arizona. Moreover, the gravamen of Intel's theory is that Dr. Miao allegedly breached his employment agreement by developing the technology claimed in the '166 patent while an Intel employee without assigning it to Intel. To support that theory, Intel heavily relies on Intel Invention Disclosures that Dr. Miao made to Intel while working as Intel employee in Arizona. *See* Compl. at ¶¶ 25-33. More specifically, Intel alleges that "Claim 11 of the '166 patent recites '[a] dual-mode implementation system of a digital lowpass-shaping FIR transmission filter' which is the same subject matter that Miao worked on while at Intel." Compl. at ¶ 24. Intel further alleges that "based on at least the 12377 Disclosure, 12174 Disclosure, 12175 Disclosure, and the Intel '651 Patent, Miao developed the finite impulse response filter technology for dual-mode wireless communications described in Claim 11 of the '166 Patent as part of his work at Intel in furtherance of Intel's business or reasonably foreseeable future business or research," "using Intel equipment, supplies, and facilities," and "using Intel's proprietary and confidential information." Compl. at ¶¶ 31, 32, 33. The 12377 Disclosure, 12174 Disclosure, 12175 Disclosure were made

by Dr. Miao in 1999 while he was an Arizona resident.  Compl., Exs. 4, 5, 6.  Similarly, the '651 Patent lists Dr. Miao as a resident of Arizona.  Compl., Ex. 7.  In other words, the principal facts supporting Dr. Miao's alleged breach of contract occurred in Arizona while Dr. Miao was an Arizona resident.

Moreover, Intel alleges that Dr. Miao breached his employment agreement by failing to notify Intel that he had "obtained a patent in the '166 Patent" and "by failing to assign to Intel the ownership rights to the invention claimed in the '166 Patent."  Compl. at ¶¶ 46, 48.  *See also* Compl. at ¶ 10 (citing provision of Dr. Miao's employment agreement requiring him to notify Intel of his "acquisition of a new intellectual property right, or such as a patent application becoming an issued patent").  When the '166 Patent issued in 2007, Dr. Miao was a resident of California. Miao Decl. at ¶ 8; Ex. 1.  Because Dr. Miao could have neither notified Intel that he had obtained the '166 Patent nor assigned the '166 Patent to Intel until it issued, the alleged breaches would have occurred in 2007 while Dr. Miao was residing in California.  As a result, Dr. Miao's New Jersey contacts were not "instrumental" in the alleged breaches.  *See Fair Lab. Practices Assocs.*, 2014 U.S. Dist. LEXIS 148549, at *8 (explaining that a defendant's contacts with the forum must be instrumental in the breach of contract for specific jurisdiction to exist).

Relatedly, Intel's contract-based claims against Dr. Miao embed within them an inventorship inquiry under federal patent law, and there was no cause of action on any such inventorship challenge until the '166 Patent issued while Dr. Miao was a California resident.  *See Gillig v. Nike, Inc.*, 602 F.3d 1354, 1363 n.5 (Fed. Cir. 2010) ("[T]here is no cause of action to correct inventorship until a patent has issued.").  *See also HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1354 (Fed. Cir. 2010) (while 35 U.S.C. § 256 "provides a private right of action to challenge inventorship" for issued patents, 35 U.S.C. § 116, which governs inventions,

13

"does not provide a private right of action to challenge inventorship of a pending patent application."); *Kamdem Ouaffo v. Pepsico, Inc.*, 2015 U.S. Dist. LEXIS 28497, at *45 (S.D.N.Y. Mar. 9, 2015) (citing same in concluding that plaintiff "cannot bring a cause of action for a correction of inventorship for the four pending patent applications"); *Picazio v. Melvin K. Silverman & Associates, P.C.*, 965 F. Supp. 2d 1411, 1416 (S.D. Fla. 2013) (concluding that a § 256 claim to correct inventorship was not ripe for adjudication because no patent had issued). An analysis of whether Dr. Miao was obligated to assign any rights in the '166 Patent to Intel necessarily involves a detailed inventorship analysis. All three internal Intel Invention Disclosure documents relied upon by Intel as supposed evidence along with the '651 Patent list a co-inventor (Tinku Acharya) along with Dr. Miao. Compl., Ex. 4 at 1; Ex. 5 at 1; Ex. 6 at 1; Ex. 7 at 1. The United States Patent and Trademark Office awarded the '166 patent to Dr. Miao as the sole named inventor. Compl., Ex. 9 at 1. Accordingly, the inventorship issue that is part and parcel of resolving Intel's contract-based claims has no relation to New Jersey given that the '166 Patent issued when Dr. Miao was a California resident.

Although Dr. Miao filed the application that would lead to the '166 Patent while residing in New Jersey, that is just one fact to be considered when analyzing the totality of the circumstances. As explained above, the majority of Dr. Miao's relevant contacts related to Intel's contract-based claims occurred in Arizona and/or California, not New Jersey. Dr. Miao's employment agreement was signed while Dr. Miao was working for Intel in Arizona and residing in Arizona. The evidence Intel relies on to support its assertion that the invention claimed in the '166 Patent was allegedly invented by Dr. Miao as part of his work at Intel in furtherance of Intel's business, using Intel's equipment, supplies and facilities, and using Intel's information is all Arizona based. And the primary alleged breaches supposedly occurred while Dr. Miao was a

California resident.  Accordingly, based on the totality of the circumstances, this Court does not have specific jurisdiction over Dr. Miao with respect to Intel's contract-based claims.

Even assuming, for the sake of argument only, that Dr. Miao had the requisite contacts with New Jersey for specific jurisdiction to exist with respect to Intel's contract-based claims, exercising jurisdiction over Dr. Miao in New Jersey would be unreasonable.  *See Magill*, 2021 U.S. Dist. LEXIS 63920, at *8-9 ("[I]t must be reasonable to require the defendant to litigate the suit in the forum state …."). *See also Dag Jewish Directories, Inc. v. Hebrew English Yellow Pages, Inc.*, 2009 U.S. Dist. LEXIS 31000, at *9 (D.N.J. Apr. 13, 2009) ("For personal jurisdiction to comport with 'fair play and substantial justice,' it must be reasonable to require the defendant to defend the suit in the forum state.").  Dr. Miao signed his employment agreement with Intel on June 14, 1999—**over twenty-three-and-a-half years ago**—when he was an Arizona resident.  Dr. Miao's employment with Intel terminated on July 2, 2003—**over nineteen-and-a-half years ago**. Although Dr. Miao's lengthy career in the signal processing field briefly took him to New Jersey, all the pertinent facts relating to Intel's contract-based claims are unrelated to New Jersey. Moreover, Dr. Miao has no on-going connections to New Jersey.  Miao Decl. at ¶ 9.  Forcing Dr. Miao, a resident of Georgia, to litigate this action in New Jersey, over 600 miles from his residence, against Intel, a large, multinational corporation with offices and employees across the world, concerning events that occurred more than two decades ago outside of New Jersey would be unreasonable and burdensome.  *See Dag Jewish Directories, Inc.*, 2009 U.S. Dist. LEXIS 31000, at *15 (finding that it would be unreasonable to enforce a New Jersey venue provision in a 1995 employment agreement against a former employee who resided in Georgia at the time the case was filed decades later).  And New Jersey has no real interest in resolving this dispute between two non-residents.  *See id.*

15

Accordingly, the Court lacks specific jurisdiction over Dr. Miao with respect to Intel's contract-based claims.  The Court should therefore dismiss these claims.

## V.   THE COURT LACKS PERSONAL JURISDICTION OVER DR. MIAO WITH RESPECT TO INTEL'S FIDUCIARY DUTY CLAIM

Intel's third claim against Dr. Miao is for an alleged breach of fiduciary duty.  As explained above, under New Jersey law, breach of fiduciary duty claims are tort claims.  As such, the *Calder* effects test applies.  And under that test, this Court lacks personal jurisdiction over Dr. Miao with respect to Intel's breach of fiduciary duty claim.

Intel alleges that "Miao breached his fiduciary duty of loyalty to Intel by using proprietary information owned by Intel to apply for an obtain the '166 Patent."  Compl. at ¶ 60.  Intel further alleges that "[b]y seeking the '166 Patent without disclosing it to Intel, or informing the U.S. Patent and Trademark Office of his work at Intel resulting in the Intel '651 Patent, Miao used his Intel employment in a way that disadvantaged Intel with regard to the intellectual property that he developed while employed by Intel."  Compl. at ¶ 61.  These thin allegations form the basis of Intel's breach of fiduciary duty claim against Dr. Miao.  Intel's Complaint is completely bereft of the sort of facts necessary to establish personal jurisdiction over Dr. Miao under the *Calder* effects test.  Indeed, there are no allegations to support any argument that New Jersey "is the focal point of the harm suffered by Intel" or that New Jersey was "the focal point of" Dr. Miao's alleged tortious activity.  *See HV Assocs.*, 2019 U.S. Dist. LEXIS 68705, at *20-21.  There are likewise no allegations to support any argument that Dr. Miao knew that Intel "would suffer the brunt of the harm caused by the tortious conduct" in New Jersey.  *See Stewart*, 2022 U.S. Dist. LEXIS 209792, at *13-14.  Nor could there be given that Intel is not even a New Jersey resident, and in light of the facts set forth in Section II.C above (*i.e.*, the majority of alleged events relating to Intel's claims and this dispute have no connection to New Jersey).  *See* Compl. at ¶ 2 ("Intel

Corporation is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located in Santa Clara, California.").  Simply put, Intel has not met, and cannot meet, its "onerous burden" of establishing Dr. Miao expressly aimed his alleged breach of fiduciary duty at New Jersey.  *See Stewart*, 2022 U.S. Dist. LEXIS 209792, at *13-14.

The Court should therefore find that it lacks personal jurisdiction over Dr. Miao with respect to Intel's claim for breach of fiduciary duty.  Intel's claim for breach of fiduciary duty should be dismissed as a result.

**VI.   CONCLUSION**

For the foregoing reasons, this Court lacks personal jurisdiction over Dr. Miao with respect to each of Intel's claims.  The Court should therefore dismiss Intel's Complaint against Dr. Miao in its entirety.

/s/Michael H. Freeman
_____
Edward J. Dauber, Esq.
Michael H. Freeman, Esq.
GREENBERG DAUBER EPSTEIN TUCKER, P.C.
One Gateway Center, Suite 600
Newark, New Jersey 07102

Daniel P. Hipskind, Esq.
Erin E. McCracken, Esq.
BERGER & HIPSKIND LLP
9538 Brighton Way, Ste. 320
Beverly Hills, CA 90210
*Pro Hac Vice application is pending*

Attorneys for Defendant, George J. Miao