<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INTEL CORPORATION,<br><br>                          Plaintiff,<br><br>v.<br><br>GEORGE J. MIAO,<br><br>                          Defendant. | Civil Action No. 22-06370 (GC) (JBD)<br><br>**MEMORANDUM OPINION** |

<u>**CASTNER, U.S.D.J.**</u>

**THIS MATTER** comes before the Court upon Defendant George J. Miao's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2). (ECF No. 16.) Plaintiff opposed, and Defendant replied. (ECF Nos. 22 & 23.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's motion is **DENIED**.

**I.      BACKGROUND**

      **A.      Procedural Background**

On October 31, 2022, Plaintiff Intel Corporation ("Intel"), a Delaware corporation with its principal place of business in California, filed its Complaint against Defendant George J. Miao ("Miao"), a resident of Georgia, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.[1] (ECF No. 1.) Intel alleges

---

[1] The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

that Miao developed certain technology while employed as an engineer at Intel that Miao patented for his personal benefit and failed to assign to Intel. (*Id.* ¶¶ 7-41.)

On January 9, 2023, Miao moved to dismiss the Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2). (ECF No. 16.) Miao submits that the Court does not have specific jurisdiction over Intel's contract-based and breach of fiduciary duty claims because the "events giving rise to Intel's . . . claims occurred primarily in Arizona and/or California." (ECF No. 16-1 at 6.[2]) On February 6, 2023, Intel opposed. (ECF No. 22.) Intel maintains that Miao worked for it in New Jersey and prepared and filed the patent application that gives rise to Intel's present claims while Miao was in New Jersey. (*Id.* at 6.) Intel argues that these contacts are sufficient to establish specific jurisdiction over Miao in New Jersey. (*Id.* at 9-17.) On February 14, 2023, Defendant replied. (ECF No. 23.)

**B.     Factual Background[3]**

Miao began working for Intel as an engineer on June 14, 1999, in Arizona. (ECF No. 1 ¶ 7; ECF No. 16-2 ¶ 6.) Prior to starting his employment, Miao signed an employment agreement that contains provisions related to intellectual property. (ECF No. 1 ¶ 8.) For example, Miao agreed to "promptly disclose and . . . assign to Intel all rights" in intellectual property that he created or developed while at Intel. (*Id.* ¶ 9; ECF No. 2 at 2.)

---

[2]     Page numbers for record citations (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3]     Where, as here, an evidentiary hearing is not held, a plaintiff's "allegations [are taken] as true," factual disputes are resolved in a plaintiff's favor, and a plaintiff is required "merely to 'establish a prima facie case of personal jurisdiction.'" *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)).

At some point,[4] Miao moved from Arizona to New Jersey, where Miao continued to work for Intel at a local facility in Morganville, New Jersey. (ECF No. 1 ¶ 21; ECF No. 16-2 ¶ 6.) While still living in New Jersey, Miao ended his employment at Intel on July 2, 2003. (ECF No. 1 ¶ 7; ECF No. 2 at 5; ECF No. 16-2 ¶ 7.) Approximately eight days later, on July 10, 2003, Miao filed U.S. Patent Application 10/616,840, which eventually resulted in U.S. Patent 7,200,166 (the "'166 Patent"). (ECF No. 1 ¶ 6.)

On August 4, 2006, three years after leaving Intel and filing the patent application, Miao relocated from New Jersey to California. (ECF No. 16-2 ¶ 7.) The '166 Patent was issued to Miao by the United States Patent and Trademark Office on April 3, 2007, while Miao was in California. (ECF No. 1 ¶ 3; ECF No. 16-2 ¶ 8.) Since then, Miao has transferred the rights in the '166 Patent to various entities. (ECF No. 1 ¶¶ 34-38; ECF No. 1-1 at 149-72.) On May 27, 2022, an assignee of the '166 Patent, MIMO Research, LLC, brought suit against Intel in the Western District of Texas, asserting claims for patent infringement. (ECF No. 1 ¶ 39; ECF No. 1-1 at 174.) Intel now sues Miao for damages, alleging that Miao breached his employment agreement with and fiduciary duties to Intel by applying for the '166 Patent and, once it was issued, failing to assign it to Intel. (ECF No. 1 ¶ 41.) Miao currently lives in Georgia. (*Id.* ¶ 3; ECF No. 16-1 at 6.)

## II.   **LEGAL STANDARD**

Rule 12(b)(2) permits a defendant to move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Where a statute does not provide for nationwide service of process, federal courts in New Jersey exercise personal jurisdiction to the extent permitted by New Jersey law. *See Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d

---

[4]   In its brief in opposition to the motion to dismiss, Intel alleges that Miao transferred to New Jersey "around August 1, 2000," but because the date is not alleged in the Complaint or provided in a sworn certification, the Court does not rely on it. (ECF No. 22 at 6.)

Cir. 2010) ("[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state.").

"New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (first citing N.J. Court Rule 4:4-4(c); and then citing *Charles Gendler & Co. v. Telecom Equip. Corp.*, 102 N.J. 460, 469 (1986)). Therefore, the key inquiry on a motion to dismiss for personal jurisdiction pursuant to New Jersey law is whether, under the Due Process Clause, "the defendant has certain minimum contacts with . . . [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

A district court can assert either general (*i.e.*, "all-purpose" jurisdiction) or specific jurisdiction (*i.e.*, "case-linked" jurisdiction) over a defendant that has minimum contacts with the forum. *See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017). "The paradigmatic forum for the exercise of general jurisdiction 'is the individual's domicile.'" *Aldossari on Behalf of Aldossari v. Ripp*, 49 F.4th 236, 257 (3d Cir. 2022) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). For specific jurisdiction, there are two primary elements that must be met: "First, there must be purposeful availment: minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state. Second, the contacts must give rise to – or relate to – plaintiff's claims." *Hepp. v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024-25 (2021)). If these elements are met, the exercise of jurisdiction must "otherwise comport[] with fair play and substantial justice." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir.

2009) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (internal quotation marks omitted).

### III. DISCUSSION

#### A. General Jurisdiction

Because Intel does not argue that it has general jurisdiction over Miao (who is now a Georgia resident) in New Jersey (*see* ECF No. 22), the personal jurisdiction analysis turns on whether the Court has specific jurisdiction over Intel's claims against Miao. *See SCE Grp., Inc. v. Garson*, Civ. No. 21-19944, 2022 WL 2952985, at *4 (D.N.J. July 26, 2022) ("Plaintiff has not established that Garson, an individual, is domiciled in New Jersey. Plaintiff merely asserts that Garson formerly resided in New Jersey . . . . Accordingly, Plaintiff has not established through competent evidence this Court's general jurisdiction over Garson in his individual capacity.").

#### B. Specific Jurisdiction

Specific jurisdiction allows the court to adjudicate claims levied against defendants with "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The minimum contacts analysis focuses on whether the defendant has, by some act related to the plaintiff's current cause of action, "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Specific jurisdiction is typically present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant "should reasonably anticipate being haled into court there." *D'Jamoos*, 566 F.3d at 105 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *see also Ford Motor Co.*, 141 S. Ct. at 1019 ("[T]he

plaintiff's claims 'must arise out of or relate to the defendant's contacts' with the forum." (quoting *Bristol-Myers Squibb*, 582 U.S. at 262)). The analysis is claim specific. *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ("Such a determination is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim . . . does not necessarily mean that it has personal jurisdiction over that same defendant as to . . . other claims.").

### 1. Contract-Based Claims

In Counts I (Breach of Contract), II (Declaratory Judgment), and IV (Breach of the Implied Covenant of Good Faith and Fair Dealing), Intel alleges that Miao breached his employment agreement with them by "seeking the '166 Patent without disclosing it to Intel or informing the U.S. Patent and Trademark Office" of his work on Intel patents; "us[ing] his Intel employment in a way that disadvantaged Intel with regard to the intellectual property that he developed while employed"; "failing to assign to Intel the ownership rights to the invention claimed in the '166 Patent"; assigning the '166 Patent to entities other than Intel; and "acting in a way inconsistent with Intel's reasonable expectations" under their employment agreement. (ECF No. 1 ¶¶ 42-56, 63-69.)

Miao argues that the Court does not have specific jurisdiction over these contract-based claims because "the principal facts supporting . . . Miao's alleged breach of contract" did not occur in New Jersey. (ECF No. 16-1 at 18.) Miao points to the fact that he signed his employment agreement with Intel in Arizona, that the Intel Invention Disclosures showing that he developed similar technology for Intel were made while Miao was an Arizona resident, that the '166 Patent was issued while Miao was a resident of California, and that any failure to assign to Intel or to inform them of the patent could not have occurred until the patent was issued and Miao was living in California or elsewhere by then. (*Id.* at 17-18.) Miao maintains that while he "filed the

6

application that would lead to the '166 Patent while residing in New Jersey, that is just one fact to be considered when analyzing the totality of the circumstances." (*Id.* at 19.)

Intel counters by arguing that "Miao had substantial contacts with New Jersey that are central to this case because [Miao] breached the employment agreement while in [New Jersey]." (ECF No. 22 at 9.) Namely, Miao prepared the '166 Patent while employed by Intel in New Jersey, filed the patent application "within eight days of leaving his employment at Intel's New Jersey facility[] and while still living in New Jersey," and "filed for . . . [the] patent[] in his own name" rather than in the name of Intel "as Miao was contractually obligated to do." (*Id.*) By preparing and filing the patent application while in New Jersey, Miao allegedly "disadvantaged Intel by misappropriating those patents from Intel, 'kicking off' a series of actions that ultimately culminated in" the '166 Patent being assigned "to MIMO Research for the purpose of suing Intel for patent infringement." (*Id.*) Further, Intel submits that Miao's filing of the patent application was a "change in status," under the Intel-Miao employment agreement, that Miao was required to inform Intel of within five days.[5] (*Id.*)

"In determining jurisdiction over a . . . contract claim, [courts] must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001) (citing *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.

---

[5] In his reply, Miao faults Intel for not providing sworn affidavits to support the jurisdictional allegations, but Miao does not mention that there were fourteen documentary exhibits attached to Intel's Complaint, including the patent application with Miao's New Jersey address and that the relevant jurisdictional facts are largely undisputed by Miao. In support of his motion to dismiss, Miao submitted a nine-paragraph declaration and several exhibits that did not meaningfully contest what Intel alleges in terms of where Miao had been located at different points in time when certain actions were alleged to have been taken. *See Miller Yacht Sales*, 384 F.3d at 97 (noting that when the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor" (citation omitted)).

7

1992)). Moreover, "[i]n contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (citing *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999)). "Actual presence during pre-contractual negotiations, performance, and resolution of post-contract difficulties is generally factored into the jurisdictional determination." *Id.* (citing *Remick*, 238 F.3d at 255-56); *see also Mellon Bank*, 960 F.2d at 1223 ("The requisite contacts . . . may be supplied by . . . the course of dealings between the parties.").

Here, the Court finds that Miao purposefully availed himself of the New Jersey forum and that Miao's contacts with the forum are sufficiently related to Intel's contract-based claims so that exercising specific jurisdiction over those claims in New Jersey is appropriate. The Court also finds that Miao's contacts with New Jersey were instrumental to the breach of contract claim and that the totality of the circumstances support exercising specific jurisdiction over Miao in New Jersey.

Although Miao signed the employment agreement and began working for Intel in June 1999 in Arizona, Miao does not dispute that he relocated to New Jersey and began working for a local Intel facility in New Jersey. (ECF No. 16-2 ¶ 6.) The application for the '166 Patent lists Miao's address in New Jersey. (ECF No. 1-1 at 32.) Miao also continued to live in New Jersey after leaving Intel, which included approximately three years during which the application for the '166 Patent was pending before the U.S. Patent and Trademark Office. (ECF No. 16-2 ¶ 7.) That Miao (after living and working in New Jersey and having prepared and submitted the '166 Patent application in New Jersey) relocated to California in August 2006, just eight months before the '166 Patent was actually issued (the patent lists Miao as the inventor with a New Jersey address), does not preclude the exercise of specific jurisdiction in New Jersey. (ECF No. 1-1 at 108.)

The employment agreement states that Miao was required, "both during and after [his]

employment with Intel," to "not use" and to keep confidential "any proprietary information." (ECF No. 2 at 2.) Miao also agreed that, "as to any intellectual property which [he] acquire[d] or control[led] during [his] Intel employment," Miao would "notify Intel . . . of any change in status, within five working days" and that he would "not use [his] Intel employment to in any way disadvantage Intel with regard to any such intellectual property." (*Id.*) Miao's actions during and shortly after his employment with Intel in New Jersey might, if the allegations of the Complaint are accepted as true, suffice to constitute a breach of these provisions. Moreover, it cannot be seriously argued that actions such as preparing and submitting the patent application in New Jersey were not instrumental to later alleged breaches, including subsequent assignments of the '166 Patent to entities other than Intel. If Miao had not prepared and applied for the patent in New Jersey, there would have been no patent to wrongfully assign.

The cases cited by Miao do not compel a different result. In *Hanson v. G&G Motorcycles, Inc.*, for example, the district court found that there was no specific jurisdiction over a Virginia business as to a breach of contract claim when a New Jersey resident (during a trip from Texas to New Jersey) stopped at the business's Virginia location to have his motorcycle repaired and ended up purchasing a different motorcycle to complete his trip home. Civ. No. 21-11278, 2022 WL 617068, at *1-4 (D.N.J. Mar. 2, 2022). The court found that the business had not directed significant activities towards New Jersey and that a few phone calls and emails exchanged between the New Jersey resident and the Virginia business after the New Jersey resident had returned home were insufficient for specific jurisdiction. *Id.* at *4. In *Magill v. Elysian Glob. Corp.*, the district court likewise found that there was no specific jurisdiction over an internet company based in Belize as to a breach of contract claim brought by a New Jersey resident when no one from the company "ha[d] ever entered New Jersey" and "Plaintiff's physical location in New Jersey [wa]s

9

the only factor that connect[ed] th[e] dispute to New Jersey." Civ. No. 20-06742, 2021 WL 1221064, at *5-7 (D.N.J. Apr. 1, 2021).

Here, in contrast to *Hanson* and *Magill*, the assertion of specific jurisdiction over Miao is not based on sporadic communications or on Intel's location alone. Instead, Miao worked in New Jersey at a local facility for Intel, continued to live in New Jersey for several years after leaving Intel's employ, and took actions in New Jersey that allegedly breached or were instrumental in the breach of Miao's employment agreement with Intel: preparing and then submitting the application for the '166 Patent that Intel claims was derived from its intellectual property.

Accordingly, the Court has specific jurisdiction over Miao as to Intel's contract-based claims, and Miao's motion to dismiss those claims pursuant to Rule 12(b)(2) is denied.

### 2. *Fiduciary Duty Claim*

In Count III (Breach of Fiduciary Duty), Intel alleges that "Miao breach his fiduciary duty of loyalty to Intel by using proprietary information owned by Intel to apply for and obtain the '166 Patent" and [b]y seeking the '166 Patent without disclosing it to Intel, or informing the U.S. Patent and Trademark Office of his work at Intel" on Intel patents. (ECF No. 1 ¶¶ 57-62.)

Miao contends that "there are no allegations to support any argument that New Jersey 'is the focal point of the harm suffered by Intel' or that New Jersey was 'the focal point of' . . . Miao's alleged tortious activity." (ECF No. 16-1 at 21 (citation omitted).) He also contends that "[t]here are likewise no allegations to support any argument that . . . Miao knew that Intel 'would suffer the brunt of the harm caused by the tortious conduct' in New Jersey." (*Id.*) In rebuttal, Intel submits that it, "including its New Jersey office[,] felt the brunt of the harm in New Jersey, including by virtue of Miao having worked on the application for the '166 patent using Intel's proprietary information while employed by Intel in New Jersey. Further, Miao aimed his tortious conduct at New Jersey by applying for the patent within the state." (ECF No. 22 at 15.)

When evaluating whether there is specific jurisdiction over a defendant as to a claim for breach of fiduciary duty, courts in the Third Circuit apply either the traditional minimum contacts analysis or the alternative three-part "effects test" that was first outlined by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783, 789-91 (1984). *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260 (3d Cir. 1998) ("Generally speaking, under *Calder* an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied."); *see also Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). Under the *Calder* effects test, a plaintiff must show: "(1) the defendant committed an intentional tort; (2) the forum state is the focal point of the harm suffered by plaintiff; and (3) the forum state is the focal point of the defendant's tortious activity, because the defendant expressly aimed its tortious conduct there." *Wolstenholme v. Bartels*, 511 F. App'x 215, 219 (3d Cir. 2013) (citing *Marten*, 499 F.3d at 296).

Here, the Court need not apply the effects test, because it finds, applying the traditional minimum contacts framework, that it has specific jurisdiction over Intel's breach of fiduciary duty claim against Miao. *See Miller Yacht Sales*, 384 F.3d at 96 n.2 (3d Cir. 2004) ("Because we find that Appellees have sufficient contacts with New Jersey under the more traditional personal jurisdiction analysis, we need not reach the question of whether the appellees would also be subject to jurisdiction under the effects test."); *see also IDT Domestic Telecom, Inc. v. Crumpler*, Civ. No. 22-1947, 2023 WL 1360404, at *5 (D.N.J. Jan. 31, 2023) (Chesler, J.) ("Because [the plaintiff] has established personal jurisdiction exists under the traditional specific jurisdiction framework, the Court will not consider whether jurisdiction exists under the *Calder v. Jones* effects test."); *Parkway-Kew Corp. v. Harris Mach. Tools, Inc.*, Civ. No. 20-6044, 2020 WL 6375790, at *6 n.2 (D.N.J. Oct. 30, 2020) (Thompson, J.) (same).

First, Miao purposefully directed his activities at the New Jersey forum: he lived in New Jersey and worked for Intel in New Jersey and prepared and submitted the application for the '166 Patent while in New Jersey allegedly using Intel's proprietary information. Both the patent application and the patent itself list Miao's address in New Jersey. (ECF No. 1-1 at 32, 108.) Second, the fiduciary duty claim arises out of or relates to these New Jersey contacts. *See Ford Motor Co.*, 141 S. Ct. at 1025. Intel specifically alleges that Miao breached his duty by applying for the patent using Intel's intellectual property (which application was prepared and submitted by Miao in New Jersey) and by seeking the patent without disclosing his actions to Intel or informing the U.S. Patent and Trademark Office of his work at Intel (which omission occurred while Miao was in New Jersey).

Accordingly, the Court has specific jurisdiction over Miao as to Intel's fiduciary duty claim, and Miao's motion to dismiss that claim pursuant to Rule 12(b)(2) is denied.

### 3. *Fair Play and Substantial Justice*

Even if Miao's contacts with New Jersey are otherwise sufficient for the exercise of specific jurisdiction, he asks the Court to find that the exercise of jurisdiction in New Jersey does not comport with "fair play and substantial justice." Miao notes the significant period of time that has passed since the initial events in this case took place as well as that he "has no ongoing connections to New Jersey" for his contention that it is unreasonable to force him as a Georgia resident to litigate Intel's claims in New Jersey. (ECF No. 16-1 at 20.) Intel disagrees, arguing that "Miao continues to benefit from the breach of his Intel employment agreement that he pursued in New Jersey while an Intel employee" and that because of remote discovery and because Miao

has already retained local counsel, "Miao's ability to travel from Georgia to New Jersey will not, practically speaking, pose any meaningful burden at all." (ECF No. 22 at 15-16.)

Once the Court determines that the defendant has minimum contacts with the forum state, it must also consider whether the assertion of personal jurisdiction over the defendant "comport[s] with 'fair play and substantial justice'" to satisfy the due process test. *Burger King Corp.*, 471 U.S. at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at 320). In this regard, it must be reasonable to require the defendant to litigate the suit in the forum state, and a court may consider the following factors to determine reasonableness: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining an efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Id.* at 477 (citing *World-Wide Volkswagen*, 444 U.S. at 292); *see also Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 114 (1987) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir.1993) ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy.").

Miao cites only *DAG Jewish Directories, Inc. v. Hebrew Eng. Yellow Pages, Inc.*, to support his position that it is unreasonable for him to litigate Intel's claims in New Jersey, but that case is readily distinguishable. Civ. No. 09-33, 2009 WL 983026 (D.N.J. Apr. 13, 2009). *DAG* involved a trademark dispute over a Georgia business directory brought against a Georgia corporation and its president that did "no business in New Jersey, nor d[id] it maintain offices, agents, or representatives" in New Jersey. *Id.* at *2. "Moreover, all . . . actions taken in furtherance of publishing and distributing the [challenged] directory occurred in the State of Georgia. The . . .

complaint d[id] not allege that any of defendants' actions were either taken in or are directly connected to the State of New Jersey." *Id.* Notwithstanding these facts, the plaintiff in *DAG* sought to exercise specific jurisdiction over the defendants because the Georgia corporation's president had, fourteen years earlier, signed an employment agreement with plaintiff's predecessor entity twice removed – even though the corporation's president had "no contacts with New Jersey during or after his employment" with the predecessor entity. *Id.* at *5. The district court found the exercise of jurisdiction to be "highly unreasonable" under these factual circumstances, noting that there was parallel state court litigation at that time in Georgia that "militate[d] heavily in favor of litigating the entire matter in the same state" and "that New Jersey's interest" in the litigation was "slight in comparison to Georgia's interest." *Id.*

*DAG* bears little resemblance to the present case. Here, Miao was employed by Intel at a local facility in New Jersey. Miao also took specific actions in New Jersey that allegedly breached his employment agreement with and fiduciary duty to Intel. Miao continued to live in New Jersey for several years after leaving Intel's employment and while the disputed patent application was pending. Although the Court appreciates that there is a burden associated with a Georgia resident having to litigate in New Jersey, the Court does not find that Miao has made the requisite showing, under the facts of this case, that it would not comport with fair play or substantial justice for Intel's claims to be litigated in New Jersey.

It should have been reasonably foreseeable to Miao when he left his employment at Intel's New Jersey facility in July 2003 and submitted a patent application eight days later while in New Jersey, which application lists Miao's address in New Jersey, that any litigation stemming from the ensuing patent (or subsequent assignments of the patent) might take place in New Jersey, even if Miao voluntarily chose to relocate elsewhere. Furthermore, the State of New Jersey has an interest in adjudicating disputes stemming from allegedly unlawful actions taken by employees in

the State who worked for employers in the State, including when those employees have misused the intellectual property of the employers. *See, e.g.*, *ADP, LLC v. Rafferty*, 923 F.3d 113, 121 (3d Cir. 2019) ("New Jersey courts have stressed that employers have 'patently legitimate' interests in their trade secrets, confidential business information, and customer relationships."); *Salinas v. Doe ex rel. Abroult*, Civ. No. 10-3244, 2010 WL 3724523, at *4 (D.N.J. Sept. 14, 2010) ("Consequentially, in this case New Jersey has an . . . interest in regulating the conduct and welfare of employers and employees operating within its borders."). This interest is not erased merely because an employee elects to relocate to another state before the employer discovers what has occurred. Finally, while the Court recognizes that a significant period has passed since many of the relevant events took place, Miao has not yet argued that the claims are untimely, and it appears that Miao agreed as a condition of his employment with Intel "that the statute of limitations shall be tolled as to any claim" based on the unlawful use or disclosure of Intel's intellectual property. (ECF No. 2 at 2.) Accordingly, the Court does not find that it would violate principles of fair play or substantial justice to exercise specific jurisdiction over Intel's claims against Miao in New Jersey.

## IV.   CONCLUSION

For the reasons set forth above, and other good cause shown, Defendant Miao's Motion to Dismiss Plaintiff's claims for lack of personal jurisdiction (*see* ECF No. 16) is **DENIED**. An appropriate Order follows.

Dated: August 15, 2023

*Georgette Castner*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE